UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-62040-CIV-DIMITROULEAS/SNOW

TEC SERV, LLC, a Florida limited liability company; and
JOHN R. TOSCANO, INC., a Florida corporation,

        Plaintiffs,

vs.

MICHAEL ALAN CRABB, individually; and A DESIGN
AT SUNNINGHILL, INC., a Florida corporation,

        Defendants.
_____/
MICHAEL ALAN CRABB,

        Counter-Plaintiff,

vs.

TEC SERV, LLC, and JOHN R. TOSCANO, INC.,

        Counter-Defendants,

JOHN TOSCANO, and MARILYN TOSCANO,

        Third-Party Defendants.
_____/

**PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANTS
FOR THE INTENTIONAL DESTRUCTION AND SPOLIATION OF
MATERIAL EVIDENCE NECESSARY TO THE PLAINTIFFS'
PROSECUTION AND DEFENSE OF THESE MATTERS, AND
REQUEST FOR EXPEDITED BRIEFING SCHEDULE IN LIGHT OF
APRIL 2013 TRIAL DOCKET**

Plaintiffs and counterclaim-defendants TEC Serv, LLC ("TEC Serv") and John R.

Toscano, Inc. ("JRTI"), and third party defendants John R. Toscano and Marilyn Toscano

(together, the "Toscanos"; TEC Serv, JRTI and the Toscanos are referred to as the "Plaintiffs"),

by and through their undersigned counsel, hereby file this, their Motion For Sanctions against the

Defendants, Michael Alan Crabb ("Crabb"), and A Design At Sunninghill Inc. ("A Design")

{25935492;1}

(Crabb and A Design are collectively referred to as the "Defendants") for the intentional destruction and spoliation of material evidence, namely, the deletion and/or corruption of more than 130,000 files of data, containing more than 24 Gigabytes of data, off TEC Serv's Asus laptop computer, after Crabb's employment was terminated for cause, after he received demands for its return, after these disputes arose, and even after this Court ordered turnover of computers for discovery and inspection.

## I.

### REQUEST FOR EXPEDITED BRIEFING SCHEDULE.

On January 18, 2013, this Court entered an Order continuing the trial in this matter and rescheduling it for the two-week calendar period commencing April 1, 2013.  See DE 174.  That Order was necessitated, in part, as a result of the Court's granting the Plaintiffs' request to inspect Crabb's computers, so that the Plaintiffs would have sixty (60) days to review the documents, communications and other information located on them.   As set forth herein, Crabb has intentionally deleted the contents of the Asus laptop computer, resulting in this Motion.  Because the trial setting is approximately four weeks away, the Plaintiffs respectfully request that this matter be briefed and decided on an expedited basis.

## II.

### PRELIMINARY STATEMENT.

Since July 11, 2011, the day TEC Serv terminated Crabb's employment for cause, TEC Serv has sought the return of the Asus laptop computer which Crabb used during the last seven months of his employment, and to which he admitted he transferred all of TEC Serv's documents when he stopped using TEC Serv's Toughbook laptop computer.  During that time, the Plaintiffs also sought the return of the USB hard drive that Crabb had utilized during his affiliation with

TEC Serv to back-up TEC Serv's computer servers in the event of a natural disaster. (Together, the Asus laptop computer and the USB hard drive are referred to as the "Computers.")

The information on the Computers was central to the Plaintiffs' claims and defenses. As for claims, Plaintiffs allege that Crabb has breached the express terms of his non-compete agreement. Although the Plaintiffs have discovered scattered evidence in black and white, the core information supporting their damages calculation existed on the Computers. As examples, the Plaintiffs have evidence from the TEC Serv customer Seaport Canaveral of Crabb's bidding on work against TEC Serv both through his employment with A Design of Sunninghill, Inc. and through his new affiliation, Hasson Electric, Inc., but Crabb has not produced a single Seaport-related document, including e-mails, bids, contracts, or other documents, in his own production. Similarly, TEC Serv has evidence from non-parties of Crabb attending meetings on behalf of competitor Hasson Electric, Inc., but such documents (including all documents from which a damages calculation can be made) were clearly absent from Crabb's production. TEC Serv has information about Crabb's bidding for contracts at the Miami Intermodal Center (the "MIC"), but no such documents were produced by Crabb. And TEC Serv's form documents have found their way to Hasson Electric, Inc.'s files, but Crabb has failed to produce evidence of same from his own files.

As for defenses, Crabb alleges he was wrongly terminated, but TEC Serv's oral and written admonitions and statistical data reflect, *inter alia*, Crabb's diminished efforts on the Company's behalf well before his termination, as alleged in the Complaint. Evidence of what Crabb was doing over the last months before his termination resided on the Computers. Indeed, Crabb's expert, Cinnamin O'Shell, was informed by Crabb that TEC Serv had millions of dollars of bids outstanding as of the date of Crabb's termination. TEC Serv does not have those – but if

they exist, they were negotiated privately by Crabb and would reside on the Computers.  Indeed, in restoring documents off the Toughbook computer that Crabb previously had deleted (without TEC Serv's authorization), TEC Serv discovered clear evidence that Crabb had altered the TEC Serv Operating Agreement before sending it to Bank Atlantic and Wachovia in support of personal loan applications, a fact to which Crabb also has testified.  This time, however, Crabb was even more careful in destroying evidence.

Without evidence from the Computers – and given Crabb's refusal to produce documents requested by the Plaintiffs (and Hasson Electric, Inc.'s claim that documents evidencing its competition with TEC Serv similarly do not exist), TEC Serve is hamstrung in proving up its damages, and limited in supporting its claim and defenses.

The process of obtaining a Court order compelling Crabb to turn over the Computers to TEC Serv has been highly litigated, unduly protracted, and extremely expensive.  Now, a year and half into that process, the Plaintiffs have discovered that the discovery battle was all a ruse by Crabb, intended to hide the fact that he had intentionally deleted and destroyed all of the evidence off the Asus Laptop Computer, and some of the evidence off the USB hard drive.[1]

Indeed, in the many different discovery responses, motions, and affidavits filed by Crabb in opposing the production and inspection of the Computers, Crabb never once advised the Court that he had previously deleted all of the documents from the Asus laptop computer and the parties were fighting over documents and communications that no longer existed.  Instead, Crabb protested that the Computers contained the same information he had produced already, that the

---

[1]   Although the focus of this motion is Crabb's complete destruction of the documents, communication, and information from the Asus laptop computer, Crabb also deleted thousands of documents from the USB hard drive.  This is equally astounding considering the fact that Crabb has repeatedly proclaimed that he maintained the USB hard drive only as a back-up for disaster recovery purposes.  If that were true, why would Crabb ever need to delete a document from the USB hard drive?

AKERMAN SENTERFITT, 2424 NORTH FEDERAL HIGHWAY, SUITE 410, BOCA RATON, FL  33431

Asus laptop computer also contained his personal and financial data, and/or (remarkably) that the Asus laptop computer belonged to him.

This Court analyzed these supposed defenses and compelled Crabb to turn over the Computers for inspection by Order dated January 17, 2013 [DE 171] (the "Turnover Order"). The Turnover Order considered, among other things, the Plaintiffs' argument that they need the information to determine what was missing off their own server (which Crabb had deleted), that they did not believe that Crabb had produced all of the documents they had requested, that Crabb's untimely production of Quickbooks data was "just the tip of the iceberg of the information that may not have been provided," that Crabb deleted data, and that the volume of data on the Computers included documents otherwise not available to the Plaintiffs.

Crabb's insouciance is staggering.  Indeed, he deleted more than 130,000 files containing well over 24 Gigabytes of data.[2]  The deletions were done <u>after</u> his termination and <u>after</u> the files were demanded by TEC Serv; many were done on the very day he filed his original state court action; and some files were even accessed and manipulated <u>after</u> this Court's Order mandating turnover for inspection.  Nor was this some accident; the deletions were made with the help of a document shredding algorithm.  Crabb's deliberate spoliation of evidence proves, *inter alia*, Crabb's pervasive violations of the Computer Fraud and Abuse Act, the Stored Communications Act, his breaches of various contractual obligations (including the Members' Agreement), his conversion, and his trespass to chattels, all claims the Plaintiffs have alleged.

The gig is up.  Crabb has been litigating this case the same way he dealt with TEC Serv during his tenure there, which led to his termination for cause:  he usurps control and power over

---

[2]   Because attaching a spreadsheet containing the information about the 133,197 files deleted would not be practical here, the undersigned has resisted the urge to do so.  However, that listing can be made available upon request by the Court.

processes that do not belong to him, eschews authority of any type, arrogates control of company information for his own purposes, and even flouts the discovery process and this Court's Orders.

**III.**

**FACTUAL AND PROCEDURAL BACKGROUND.**

**A.**   **Plaintiffs' Informal Efforts To Secure Return of the Computers and Documents Located Thereon.**

The Plaintiffs have sued their former employee, Crabb, for, *inter alia,* breaching his non-competition agreement with TEC Serv and engaging in electronic espionage against them.  From the day that Crabb's employment was terminated for cause, TEC Serv has demanded the return of the Computers and the documents, communications, and other information contained thereon. See **Exhibit "1"** attached hereto (the TEC Serv termination letter dated July 8, 2011 demanding Crabb "return all real and intellectual property of TEC Serv LLC in [his] possession immediately, including but not limited to computer laptop, computer desktop, any test equipment, tools, books, all email correspondence with customers, vendors and employees, electronic or hardcopy customer contact information, intellectual property information and analysis, proposals, etc.").  [MC-0001354 – MC-0001357].  Essentially, Crabb had walked out with every piece of sensitive and confidential financial, customer and competitive information belonging to the Plaintiffs.

This demand to preserve and return the Computers was made pursuant to several of Crabb's contractual obligations including, without limitation, the Employee Invention Assignment and Confidentiality Agreement, attached hereto as **Exhibit "2"** (which is also Exhibit "D" to the TEC Serv Members' Agreement), and the TEC Serv Members' Agreement, attached hereto as **Exhibit "3."**  The Employee Invention Assignment and Confidential Agreement specifically mandates that, *inter alia*, "[u]pon termination of [Crabb's] employment

with the Company, [Crabb] will promptly deliver to the Company all documents and materials of any nature pertaining to [his] work with the Company.  [Crabb] will not take with [him] any documents or materials or copies thereof containing any Proprietary Information."  Exh. 2, p. 2. Additionally, the TEC Serv Members' Agreement expressly states, *inter alia*, that Crabb shall not use or disclose TEC Serv's trade secrets, customer lists, or other confidential business information.  Members' Agreement, Art. III.

When it became obvious to TEC Serv that Crabb had not complied with his obligations to return TEC Serv's property, on July 28, 2011, TEC Serv followed up with Crabb and demanded that he return the Asus laptop computer.  On August 2, 2011, Crabb responded to TEC Serv's demand by stating:

> I have the computer.  It does not contain any TEC Serv data.  Any TEC Serv proprietary data on the machine was cleared using a shredding algorithm per DoD spec 5220-22.M.  I will provide it to you once I have had a chance to remove person [sic] data, or alternatively we can discuss my buy out of it if you are so willing.

Thereafter, on August 25, 2011 when Crabb still had not returned the Computers, TEC Serv sent Crabb yet another email demanding their return.  See email exchanges attached hereto as **Exhibit "4."**  (MC-0027351 – MC-0027354).

Undersigned counsel for the Plaintiffs was extremely concerned by Crabb's responses and inquired directly with Jeffrey Gutchess, Esq., Crabb's counsel, as to whether the documents and the data on the Asus laptop computer had, as stated by Crabb, been deleted by Crabb in the face of TEC Serv's demand to return same.  Mr. Gutchess assured the undersigned that the documents and data on the Computers had not been deleted and that it was in his possession for safe-keeping.  Mr. Gutchess also stated that it would remain in his possession pending payment of certain unspecified expenses, upon which Crabb would return the Asus laptop computer to TEC

Serv.

On October 13, 2011, having not yet received the Asus laptop computer from Mr. Gutchess, the undersigned again requested that he be permitted to have it picked up. See **Exhibit "5"** attached hereto. Although Mr. Gutchess did not turn over the Asus laptop computer as requested, he did confirm that he still had it and that nothing had been deleted from it.

This stalemate over the Asus laptop computer continued for several months and became a central focus in proceedings pending at the time, wherein the Plaintiffs were attempting to have Mr. Gutchess disqualified as counsel for the Defendants. As part of the justification of the disqualification, the Plaintiffs asserted that Mr. Gutchess and Crabb possessed an unfair informational advantage as a result of their possession of the Computers. Indeed, 14 months ago, at the January 12, 2012 hearing conducted by Magistrate Judge Snow in connection with the disqualification proceedings, Mr. Gutchess admitted in open court that he had the Computers in his possession, custody and control:

> "The other thing they refer to is the laptop and the copy of the server.
>
> Mr. Crabb has told them he would give that back to them if they pay his expenses. He had outstanding expenses when they parted ways.
>
>         *         *         *         *         *
>
> He is not using that information. I have the former head of the DEA that works for me. He is a federal investigator. Mr. Crabb turned that over to Mr. Hollyfield. He has kept it in safe keeping. Nobody has look [sic] at it. Nobody has used it…"

See **Exhibit "6"** at p. 27, line 6-20, attached hereto, which was also attached at DE 98-3, p. 4, and DE 163-1, p. 4.

***At no time during the disqualification proceedings did Mr. Gutchess or Crabb advise the Plaintiffs or the Court that <u>all</u> of the documents had been deleted from the Asus laptop***

- 8 -

*computer.* To the contrary, Mr. Gutchess specifically advised the Court that it was in his possession for "safe keeping."

**B.**   **Plaintiffs' Request For Inspection of the Computers.**

Because the Plaintiffs' numerous informal efforts to secure the return of its Computers from Crabb was unsuccessful, the Plaintiffs served the following Request For Inspection upon the Defendants:

REQUEST FOR INSPECTION 1:

Laptop computer (and associated hard drive) owned by TEC Serv, LLC and used by Crabb during his employment with TEC Serv, LLC (together, the "TEC Serv Laptop and Hard Drive").

In response thereto, Crabb objected as follows:

OBJECTIONS TO REQUEST FOR INSPECTION 1:

Mr. Crabb objects to this request on the grounds that it is overly broad and unduly burdensome. **First**, Mr. Crabb has already responded to 96 separate requests for production, and **the material that is being provided in response to those requests is duplicative of the material contained on the requested laptop**. **Second**, the laptop computer that is the subject of the request contains exactly the same information as the laptop computer that Mr. Crabb previously provided to TEC Serv, and so **the request seeks information that has already been provided**. **Third**, after Mr. Crabb provided the previous laptop computer, TEC Serv apparently retained a computer forensic consultant to resurrect personal materials that had been on that computer. **Mr. Crabb should not be subject to TEC Serv once again seeking to resurrect and exploit personal, private financial and other material**. **Fourth**, Mr. Crabb purchased the requested laptop with his own money to be reimbursed by TEC Serv. TEC Serv, however, upon terminating Mr. Crabb did not reimburse Mr. Crabb for the business expenses he had incurred. Accordingly, **TEC Serv has no right to that laptop**.

(Emphasis added.)

*At no time in any of Crabb's objections did Crabb advise the Plaintiffs or the Court that __all__ of the documents had been deleted from the Asus laptop computer.*

AKERMAN SENTERFITT, 2424 NORTH FEDERAL HIGHWAY, SUITE 410, BOCA RATON, FL  33431

C.    **Plaintiffs' Motion To Compel Inspection of the Computers.**

As a result of Crabb's steadfast refusal to comply with his discovery obligations and to permit the inspection of Computers, the Plaintiffs moved the Court for relief.  [DE 98].  In his Response to the Motion to Compel [DE 121], Crabb offered several justifications as to why the inspection should not have been permitted, including the arguments that:  (1) the Computers supposedly were Crabb's personal property; (2) an inspection of the Computers was unnecessary; (3) the Computers contained personal and confidential information; and (4) Crabb did not access TEC Serv's computer server post-termination.  The response attached a Declaration of Michael Alan Crabb.  [DE 121-1].  In that Declaration, Crabb stated, under penalties of perjury, that he transferred the contents of the Toughbook computer to the Asus laptop computer, and had used the Asus laptop computer from January 2011 through his termination by TEC Serv in July 2011 to conduct personal and TEC Serv business.  He also testified that he continued to use the Asus laptop computer after he was terminated by TEC Serv.

*At no time in the opposition to the Motion To Compel or in Crabb's Declaration did Crabb advise the Plaintiffs or the Court that __all__ of the documents had been deleted from the Asus laptop computer.*  To the contrary, Crabb objected primarily based on his fear that the Plaintiffs would access the "personal, financial, legal, and other information [Crabb] put on that laptop, regardless of the fact that all such information has no relevance to this lawsuit."  DE 121-1, ¶ 10.

D.    **Plaintiffs' Rule 72(a) Objections.**

On December 26, 2012, Magistrate Judge Snow denied the Plaintiffs' Motion To Compel [DE 159] and the Plaintiffs filed Rule 72(a) Objections thereto.  [DE 163].  In opposing those Objections, Crabb again reiterated all of his "justifications" for precluding the Plaintiffs' right to inspect the Computers and the documents thereon.  [DE 167].  However, Crabb again failed to

advise the Plaintiffs and the Court that **all** of the documents had been deleted from the Asus laptop computer.

**E.      Court's Order Sustaining Objections To Magistrate Judge's Order.**

On January 16, 2013, the Court entered its Order Sustaining Objections To Magistrate Judge's Order [DE 171] and found that the Plaintiffs may inspect the Computers.  The Order addressed the arguments, including the Plaintiffs' arguments that:

- Crabb had deleted information off TEC Serv's sever, such that the only way to determine what was missing was to compare the contents of the Computers against the data held on the servers;

- Crabb had not turned over all of the discoverable information in his possession;

- Crabb's untimely production of Quickbook documents is just the tip of the iceberg of other information that was not produced in discovery;

- Crabb deleted data; and

- Evidence of Crabb's work from the Asus laptop computer during his employment with TEC Serv had not been provided.

The Court found that Crabb had admitted to deleting all of the information on the Toughbook computer he gave to TEC Serve and had transferred it to the Asus laptop computer; and that the Asus laptop contained several months of work that was not provided on the Toughbook computer.

The Court required the parties to enter into a confidentiality agreement to address Crabb's stated concerns about disclosure of personal information.

Notwithstanding the Court's clear dictate that the Plaintiffs were entitled to inspect the Computers, *at no time after the entry of the Order did Crabb advise the Plaintiffs or the Court that **all** of the documents had been deleted from the Asus laptop computer.*

Following the Court's Order, the parties negotiated and ultimately entered into an Agreed Confidentiality Order.  [DE 178].

AKERMAN SENTERFITT, 2424 NORTH FEDERAL HIGHWAY, SUITE 410, BOCA RATON, FL  33431

**F.**     **Inspection of the Asus Laptop Computer Reflects That It Is Devoid of Documents, Communications, and Other Information.**

In a nutshell, the Plaintiffs have turned over the Computers for inspection to their own forensic experts, NetEvidence, Inc., who have confirmed that the allocated space of the Asus laptop computer contains virtually nothing.  Indeed, other than one or two third-party vendor manuals (which must have somehow evaded Crabb's intentional deletion efforts), there are no documents or communications accessible by turning on the computer and browsing through the files and folders.  Moreover, other than application folders irrelevant to the inspection, there are virtually no files or folders to browse.  They have all been intentionally deleted by Crabb.

Further, Crabb made significant changes to the Asus Laptop Computer <u>after</u> the Court's Order was entered.  Attached hereto as **Exhibit "7"** is a printout reflecting the data on the Asus laptop computer deliberately accessed and modified by Crabb after the Court entered its January 16, 2013 Order.

As a result, there are no documents, communications, or other information residing in the allocated spaces of the Asus laptop computer from which the Plaintiffs can determine:  (1) what documents were on the Toughbook computer that were transferred to the Asus laptop computer; (2) the evidence substantiating Crabb's activities during his last months with TEC Serv (including those contrary to TEC Serv's interests, and/or records substantiating how little he was doing for TEC Serv during that time); (3) what communications Crabb made to, *inter alia*, TEC Serv customers, vendors, suppliers, qualifiers, agents, bankers, lawyers, insurance agents, bonding agents, contractors, subcontractors, material men, and employees, both before and after his termination; (4) what documents, communications, and other materials Crabb accessed, copied, and utilized both prior to and after his termination; (5) what confidential and proprietary documents, communications and other materials Crabb accessed and used to compete with the

Plaintiffs; or (6) what documents, communications, and other information was deleted by Crabb from the TEC Serv servers and computers.  Simply put, Crabb intentionally has destroyed the Plaintiffs' ability to properly prosecute and defend these actions.

Furthermore, according to NetEvidence, Inc., one of the few remaining items not deleted from the Asus Laptop Computer is a computer program designed to shred documents from the memory of the computer.

The extent of Crabb's destruction of evidence is staggering.  According to NetEvidence, Crabb has deleted **133,197** files from the Asus laptop computer alone, which total approximately **24.4 Gigabytes** of data.

So after haranguing for a year and a half, Crabb now has produced the Computers, wiped clean of the evidence of precisely what he was doing while employed at TEC Serv, what he took with him when he was terminated, and how he used that evidence to compete against and disparage the Plaintiffs.  Instead of disclosing that he had destroyed evidence, Crabb has been leading the Plaintiffs, and the Court, on a wild goose chase, raising phantom defenses that inspection of the Computers would compromise his personal information, or alternatively, was unwarranted, or, remarkably, that the Computers and the information on it actually belonged to Crabb.

And now the truth is apparent:  Crabb has been attempting to duck discovery of his spoliation.

AKERMAN SENTERFITT, 2424 NORTH FEDERAL HIGHWAY, SUITE 410, BOCA RATON, FL  33431

# IV.

## ARGUMENT.

**A.**    **An Order Should Issue Striking the Defendants' Pleadings For Spoliation of Material Documents, Communications, and Other Information.**

Under Florida law, spoliation is defined as the "the intentional destruction, mutilation, alteration, or concealment of evidence." Golden Yachts, Inc. v. Hall, 920 So. 2d 777, 780 (Fla. 4th DCA 2006 (quoting Black's Law Dictionary 1437 (8th ed. 2004); see also, Wilson v. Wal-Mart Stores, Inc., No. 5:07-cv-394-Oc-10GRJ, 2008 WL 4642596, at *2 n.4 (M.D. Fla. Oct. 17, 2008).

> Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information.  While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.

Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 127 (S.D. Fla. 1987), quoting Wm. T. Thompson v. General Nutrition Corp., Inc., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984). Accord Banco Latino, S.A.C.A v. Gomez Lopez, 53 F. Supp. 2d 1273 (S.D. Fla. 1999); Preferred Care Partners Holding Corp. v. Humana, Inc., No. 08-20424-CIV, 2009 WL 982460 at *3-4 (S.D. Fla. Apr. 9, 2002) (Simonton, M.J.).

The sanction of dismissal or the imposition of adverse inference is warranted where the spoliator acted in bad faith.  Socas v. The Northwestern Mut. Life Ins. Co., No. 07-20336-CIV, 2010 WL 3894142, at *4 (S.D. Fla. Sept. 30, 2010) (Simonton, M.J.) (citing Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998)); see also, Preferred Care Partnes Holding, supra, 2009 WL 982460 at 3-4 (court has inherent power to regulate litigation and sanction parties for

abusive practices, including the inherent authority to enter default judgment for destruction of evidence).   Crabb's deletion of 133,197 files from the Asus laptop computer consisting of approximately 24.4 Gigabytes of data was not done accidentally – it was done intentionally, with a shredding algorithm specifically designed to make documents, communications, and other information less likely to be recovered.   Not only is this bad faith on its face, it is especially nefarious given the 18-month discovery battle wherein Crabb repeatedly insisted – in discovery responses, motions, and sworn declarations – that the documents existed but should not be discoverable by the Plaintiffs because they might somehow obtain more discovery than Crabb thought the Plaintiffs were entitled to receive.

Further, even in the absence of <u>direct</u> evidence of bad faith, the determination of bad faith may be based upon circumstantial evidence where the following factors are present:   (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.   <u>Socas</u>, 2010 WL 3894142, at *4-5 (<u>citing</u> <u>Walter v. Carnival Corp.</u>, No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010)).

There can be no credible explanation by Crabb for his destruction and deletion of this material and critical evidence, especially in light of the great lengths to which Crabb and his counsel went to hide the evidence of the intentional spoliation.

<u>Flury v. Daimler Chrysler Corp.</u>, 427 F.3d 939 (11th Cir. 2005) is instructive.  There, the court considered whether spoliation of physical evidence warranted dismissal and listed the following conditions:

(1) whether the defendant was prejudiced as a result of the destruction of evidence;

(2) whether the prejudice could be cured;

(3) the practical importance of the evidence;

(4) whether the plaintiff acted in good faith or bad faith; and

(5) the potential for abuse if expert testimony about the evidence was not excluded.

<u>Id.</u>, 427 F.3d at 945.

Here, the analysis is equally clear cut.  At Crabb's October 3, 2012 deposition in this action, Crabb testified that he maintained a complete copy of every TEC Serv and JRTI project between 2006 until July 2011.  <u>See</u> Crabb's Deposition Transcript, 156:23 – 157:7, an excerpt of which is attached hereto as **Exhibit "8."**  Crabb further swore under penalties of perjury that all those documents "were on [his] computer," <u>see</u> Crabb's Deposition Transcript, 157:4-7, and that he only accessed that information after his employment with TEC Serv was terminated "for a response to this action."  <u>Id.</u> at 159:1-3, an excerpt of which is attached hereto as **Exhibit "9."**

Crabb's sworn Declaration filed in opposition to the Plaintiffs' efforts to inspect the Computers attests that:  (1) Crabb transferred the contents of the Toughbook computer to the Asus laptop computer; (2) Crabb used the Asus laptop computer for personal and business use from January 2011 through his termination by TEC Serv in July 2011; and (3) Crabb continued to use the Asus laptop computer after his termination by TEC Serv (presumably to solicit TEC

AKERMAN SENTERFITT, 2424 NORTH FEDERAL HIGHWAY, SUITE 410, BOCA RATON, FL 33431

Serv customers and employees,[3] to use TEC Serv documents, and to compete against TEC Serv using those very documents, communications, and information Crabb has intentionally deleted).

We now know that Crabb not only accessed the documents, communications, and other information on the Asus laptop computer (thereby destroying the metadata associated therewith), he also intentionally deleted all of the documents, communications, and other information from it so that the Plaintiffs would be unable to prosecute and defend the claims in this action.

Crabb's intentional destruction of this evidence is certainly prejudicial to the Plaintiffs. Indeed, without this information, Crabb has eliminated critical proof necessary in the Plaintiffs' affirmative claims and defenses including, without limitation:  (1) what documents were on the Toughbook computer that were transferred to the Asus laptop computer; (2) the evidence substantiating Crabb's activities in the last months of his affiliation with TEC Serv (including those contrary to TEC Serv's interests, and/or records substantiating how little he was doing for TEC Serv during that time); (3) what communications Crabb made, *inter alia*, to TEC Serv customers, vendors, suppliers, qualifiers, agents, bankers, lawyers, insurance agents, bonding agents, contractors, subcontractors, material men, and employees, both before and after his termination; (4) what documents, communications, and other materials Crabb accessed, copied, and utilized both prior to and after his termination; (5) what confidential and proprietary documents, communications and other materials Crabb accessed and used to compete with the Plaintiffs; and (6) what documents, communications, and other information were deleted by Crabb from the TEC Serv servers and other computers.

---

[3]  It is undisputed that Crabb's new affiliation, Hasson Electric, Inc., has hired away at least seven full time employees from the Plaintiffs.  See Affidavit of Gerald Hasson,  DE 125-1, ¶ 7. Interestingly, this third-party is being represented in this action by the same attorney – Jeffrey Gutchess – as are the Defendants.

AKERMAN SENTERFITT, 2424 NORTH FEDERAL HIGHWAY, SUITE 410, BOCA RATON, FL  33431

Indeed, because Crabb knew that TEC Serv terminated his employment for cause – including because he simply was not doing his job – Crabb took steps to delete proof of what he was actually doing prior to his termination.  Based upon his current affiliation with Hasson Electric, Inc. and the seven ex-employees of the Plaintiffs stolen away by them, it is certainly reasonable to conclude that Crabb was busy setting up his business with Hasson Electric, Inc. to steal TEC Serv's business.  By destroying the material evidence, Crabb wanted to make sure the Plaintiffs did not secure that proof.

As a result of Crabb's bad faith spoliation of evidence crucial to Plaintiffs' prosecution and defense of these actions, the Plaintiffs respectfully request that the Court strike the Defendants' pleadings, and enter Judgment in favor of the Plaintiffs as to all claims in this action.

**B.** **Alternatively, the Plaintiffs Are Entitled To Adverse Inferences Against the Defendants.**

A party seeking an adverse inference as a sanction for spoliation of evidence must show that:  (1) the evidence existed at one time; (2) the evidence is relevant to the moving party's claim; and (3) the spoiler breached a duty to preserve the evidence.  <u>Wilson</u>, 2008 WL 4642596 at *2; <u>Posley v. Eckerd Corp.</u>, 433 F. Supp. 2d 1287, 1315 (S.D. Fla. 2006) (<u>citing</u> <u>Zubulake v. UBS Warburg LLC</u>, 229 F.R.D. 422, 430 (S.D.N.Y. 2004).  In the Eleventh Circuit, an adverse inference is drawn from a party's failure to preserve evidence when the absence of that evidence is predicated on bad faith.  <u>Penalty Kick Mgmt. Ltd. v. Coca Cola Co.</u>, 318 F.3d 1284, 1294 (11th Cir. 2003).  Adverse inferences are "one of the least severe sanctions which the court can impose."  <u>Inmuno Vital, Inc. v. Telemundo Group, Inc.</u>, 203 F.R.D. 561, 574 (S.D. Fla. 2001); <u>accord</u> <u>Victor v. Makita U.S.A., Inc.</u>, No. 3:06-CV-479-J-33TEM, 2007 WL 3334260, at *2 (M.D. Fla. Nov. 9, 2007) (referring to an adverse inference as a "mild sanction").

As an alternative sanction, the Plaintiffs seek an adverse inference against the Defendants for evidentiary purposes in this action that the Plaintiffs' documents, communications, and other information:

(1) were improperly copied, removed, deleted, and converted by Crabb in furtherance of his intentions to leave the employment of TEC Serv to commence a business competitive with TEC Serv;

(2) were improperly copied, removed, deleted, and converted by Crabb with the intention of using that information in his employment with A Design, and his affiliation with Hasson Electric, Inc., to compete against TEC Serv; and

(3) were actually used in Crabb's employment with A Design At Sunninghill, Inc., and his affiliation with Hasson Electric, Inc., to compete against TEC Serv, and therefore used by A Design and Hasson Electric, Inc. as their agent.

Additionally, the Plaintiffs seek an adverse inference against the Defendants for evidentiary purposes in this action that the documents, communications, and other information intentionally deleted by Crabb from the Asus laptop computer:

(4) contained evidence of Crabb's use of TEC Serv's Computers for non-TEC Serv business during Crabb's employment by TEC Serv;

(5) contained evidence of Crabb's poor productivity during the last year of his employment by TEC Serv;

(6) contained evidence of Crabb's violations of the Members' Agreement; and

(7) contained additional proof supporting TEC Serv's termination of Crabb for cause.

Finally, the Plaintiffs seek an adverse inference against Crabb that because he has been improperly competing against TEC Serv in violation of his contractual obligations, that TEC

Serv is entitled to an injunction prohibiting further competition (as defined in the Members' Agreement) for a period of two years from the Judgment, with monetary sanctions in a liquidated amount to be determined by the Court for each violation thereof, plus attorneys' fees and costs.

As stated herein, the documents, communications, and other information on the Asus Laptop Computer existed at one time, are relevant and material to the Plaintiffs' claims and defenses in the action, and were destroyed when Crabb, in bad faith, breached his duty to preserve such evidence by intentionally deleting it.

## V.

## CONCLUSION.

For the reasons set forth herein, the Plaintiffs respectfully request that the Court strike the Defendants' pleadings; enter Judgment in favor of the Plaintiffs as to all claims in this action; and award such additional and further relief as the Court deems just and proper.

## VI.

## PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEE AND COSTS.

This Motion arises subsequent to the Court's Order Sustaining Objections To Magistrate Judge's Order [DE 171], which granted the Plaintiffs' Motion To Compel Production of Computer For Inspection [DE 98]. As stated above, this Motion seeks sanctions arising from the intentional, bad faith spoliation of material evidence. Additionally, arising from that intentional spoliation, this Motion also seeks entitlement to their attorneys' fees and costs pursuant to the parties' contractual agreements, as well as pursuant to the Federal Rules of Civil Procedure and the Court's inherent authority. Accordingly, should the Court grant this Motion, the Plaintiffs respectfully request that the Court set a hearing to consider an award of costs and fees to the Plaintiffs, including without limitation, their attorneys' fees incurred in making this Motion.

AKERMAN SENTERFITT, 2424 NORTH FEDERAL HIGHWAY, SUITE 410, BOCA RATON, FL 33431

## VII.

## LOCAL RULE 7.1 CERTIFICATION.

The undersigned counsel hereby certifies that prior to filing this Motion, the undersigned conferred with Counsel for the Defendants in a good faith effort to resolve the issues raised in the Motion.  The Defendants do not consent to the relief sought in this Motion.

Respectfully submitted,

AKERMAN SENTERFITT


By:   /s/  Kevin P. Mason             .
     Kevin P. Mason, Esq.
     Florida Bar No. 344915
     kevin.mason@akerman.com
     Daniel B. Rosenthal, Esq.
     Florida Bar No. 711934
     daniel.rosenthal@akerman.com
     2424 North Federal Highway, Suite 410
     Boca Raton, Florida 33431
     Telephone:  561.862.4018
     Facsimile:   561.368.4668

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

March 8, 2013, on all counsel or parties of record on the service list below.

/s/ *Kevin P. Mason*
Kevin P. Mason, Esq.
Fla. Bar No. 344915

## <u>SERVICE LIST</u>

Jeffrey W. Gutchess, Esq.
Bilzin Sumberg Baena Price & Axelrod
1450 Brickell Ave, 23rd Floor
Miami, Florida 33131
Telephone: 305.350.7311
Facsimile: 305.351.2131
Email: jgutchess@bilzin.com

Benjamin Wolkov, Esq.
Four Seasons Tower
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131
Telephone: 305.517.3968
Facsimile: 888.788.2341
Email: BWolkov@monterowolkov.com

Allen P. Pegg, Esq.
Murai, Wald, Biondo & Moreno,
1200 Ponce de Leon Boulevard
Coral Gables, FL 33134
Telephone: 305.444.0101
Facsimile: 305.444.0174
Email: apegg@mwmb.com

AKERMAN SENTERFITT, 2424 NORTH FEDERAL HIGHWAY, SUITE 410, BOCA RATON, FL 33431