UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-CV-62040-Dimitrouleas/Snow

TEC SERV, LLC, a Florida Limited Liability Company, and JOHN R. TOSCANO, INC., a Florida corporation,

Plaintiffs,

v.

MICHAEL ALAN CRABB, individually, and A DESIGN AT SUNNINGHILL, INC, a Florida corporation,

Defendants

_______________________________________ /

MICHAEL ALAN CRABB

Counter Plaintiff

v.

TEC SERV, LLC, JOHN R. TOSCANO, INC.

Counter Defendants

JOHN TOSCANO, MARILYN TOSCANO,

Third Party Defendants.

_______________________________________ /

**DEFENDANTS' MOTION TO STRIKE DECLARATION AND OTHER EXHIBITS PREJUDICIALLY FILED OUT OF TIME PURSUANT TO LOCAL RULES OR, IN THE ALTERNATIVE, MOTION FOR LEAVE FOR TIME TO PREPARE AND FILE SUR-REPLY**

Defendants/Counter-Plaintiffs Michael Alan Crabb and A Design At Sunninghill, Inc. (together, "Mr. Crabb"), by undersigned counsel and pursuant to Local Rule 7.1(c), L.R. S.D. Fla., hereby move the Court for entry of an Order striking the Declaration of James Stanford Wilson (the "Wilson Declaration," DE #194-1) and Exhibits 3, 4, and 5 (the "Untimely Exhibits," DE ## 194-11, 192-12, 194-13) of the Motion for Sanctions filed by Plaintiffs/

Counter-Defendants/Third-Party Defendants TEC Serv, LLC, John R. Toscano, Inc., and John and Marilyn Toscano (collectively, the "Toscanos").

Although the Toscanos use the Wilson Declaration and the Untimely Exhibits purportedly in support of the arguments made in their Motion for Sanctions, the Toscanos did not submit these materials along with that Motion. Rather, the Toscanos decided to wait until filing their Reply, less than forty-eight hours before the scheduled hearing on the Motion, before submitting the Wilson Declaration and the Untimely Exhibits. Because the Toscanos' attempts violate Local Rule 7.1(c) and unfairly prejudice Mr. Crabb by preventing him from responding in writing to the claims made in the Wilson Declaration and the Untimely Exhibits, those materials should be stricken. See Managed Care Solutions, Inc. v. Essent Healthcare, Inc., 736 F. Supp.2d 1317, 1321 n.6 (S.D. Fla. 2010) (striking an affidavit not timely submitted in support of a motion for sanctions based on alleged spoliation for these exact reasons).

In the alternative, Mr. Crabb moves the Court for leave – and sufficient time – to prepare and file a sur-reply and supporting declarations and evidentiary submissions to rebut the contents of the late-filed Wilson Declaration and Untimely Exhibits.

**BACKGROUND**

The Toscanos filed their Motion for Sanctions on March 8, 2013. Although the Motion for Sanction is rife with statements concerning the "more than 130,000 files containing well over 24 Gigabytes of data" that the Toscanos claim Mr. Crabb wrongfully deleted, altered, or otherwise rendered inaccessible, the Toscanos did not submit any sworn statement in support of these claims. (DE #181, at p. 5.) Such failure is particularly noteworthy given the fact that the Toscanos clearly could have done so had they chosen to. Indeed, in the Motion itself, the Toscanos state that they had "turned over the Computers for inspection to their own forensic

experts, NetEvidence, Inc., who have confirmed that the allocated space of the Asus laptop computer contains virtually nothing." (Id. at p. 12.) As the Toscanos elaborate, "According to NetEvidence, Crabb has deleted 133,197 files from the Asus laptop computer alone, which total approximately 2.4 Gigabytes of data." Id. at p. 13.) What the Toscanos did not do, however, is submit any evidence, such as a sworn statement of their NetEvidence representative, Mr. Wilson, in support of their Motion for Sanctions.

At the Toscanos' request, the Court ordered Mr. Crabb to file an expedited Opposition to the Motion for Sanctions. For this reason, Mr. Crabb's lead counsel returned early from a business trip to Moscow and, working with Mr. Crabb and his primary co-counsel (who were both also out of the State at the time), managed to file the Opposition by the Court's original deadline of Friday, March 15.[1] In support of his Opposition, and although he had had just one week to do so, Mr. Crabb submitted not only his own sworn declaration, but also the sworn declaration of a computer expert, Gabriel Campos. (See DE ##189-1, 189-2.) Those declarations provide persuasive evidentiary support for Mr. Crabb's arguments in opposition to the Toscanos' Motion for Sanctions.

Just before Noon on March 20, the Toscanos filed their Reply in support of their Motion for Sanctions. Incredibly, along with their Reply the Toscanos submitted, for the first time, a 5-½ page, 29-paragraph declaration from James Wilson, of NetEvidence, and a quarter-inch stack of other materials (the Untimely Exhibits) in putative support of the affirmative arguments they had made in their Motion for Sanctions. There is no reason why the Toscanos were not able to file these materials nearly two weeks earlier, along with their Motion for Sanctions, as they should have done. The untimely filing of these materials violates the Local Rules and unfairly

[1] A corrected opposition, cleaning up various typographical errors and the like, was filed late in the evening of Sunday, March 17.

prejudices Mr. Crabb, who does not have time to prepare and submit a further declaration refuting Mr. Wilson's claims and the contents of the Untimely Exhibits before the hearing set for March 22 at 10:00 a.m. Thus, those materials should be stricken or, in the alternative, Mr. Crabb should be given leave and time to prepare and file a sur-reply and supporting evidentiary submissions to address these new materials.

## ARGUMENT

### I. The Wilson Declaration and the Untimely Exhibits Should Be Stricken

Local Rule 7.1(c) is specifically designed to prevent situations like the one the Toscanos have created here. Pursuant to that Rule,

> **All materials in support of any motion, response, or reply, including affidavits and declarations, shall be served with the filing**.

(Emphases added.) Significantly, this Rule has been applied to circumstances just like the ones at bar.

In Managed Care Solutions, Inc. v. Essent Healthcare, Inc., 736 F. Supp.2d 1317 (S.D. Fla. 2010), the plaintiff filed a motion for sanctions and sought (as here) the entry of a default judgment due to the defendant's alleged spoliation of evidence. See id. at 1318. In that case, the plaintiff submitted various exhibits with its motion, including (unlike here) a sworn affidavit concerning some of the relevant facts. See id. at 1319 (referencing the Affidavit of Steven Wylie, which was submitted as Exhibit 7 to the motion). The defendant then submitted its opposition to the motion, and the plaintiff filed its reply in support. See id. at 1321. Some weeks later, the plaintiff filed an additional declaration in support of its motion. See id. at 1321 n.6.

After considering the contents of the declaration, the Court concluded that the declaration related to issues "which were addressed in the motion for sanctions." Id. As such, under the

Local Rules, "the plaintiff should have filed the declaration at the time it filed its motion for sanctions." Id. (citing to Local Rule 7.1(c)). The Court also noted that because the declaration was filed after the close of briefing, "there was no opportunity for further briefing regarding the motion" to which the declaration related and the Court's consideration of the declaration would be "prejudicial" to the defendant. Id. (internal alterations and quotations omitted). Based on these circumstances, the Court concluded that it "w[ould] not consider this untimely filed declaration." Id.; see also Williams v. R.W. Cannon, Inc., 657 F. Supp.2d 1302, 1320 (S.D. Fla. 2009) (striking an affidavit filed in support of a motion after the close of briefing because "[t]here is no opportunity for further briefing regarding the motion to which this affidavit relates; and, therefore, it would both be prejudicial to Plaintiff and ill-serve the interests of judicial economy to permit additional briefing.").

The same circumstances exist here, and thus the same result should obtain. Like the late-filed declaration in Managed Care Solutions, here, the contents of the Wilson Declaration and the Untimely Exhibits relate entirely to the affirmative arguments made in the Motion for Sanctions:

- The entirety of the Wilson Declaration expounds on the Toscanos' claims that Mr. Crabb wrongfully deleted or altered "more than 130,000 files containing well over 24 Gigabytes of data." Mot. for Sanctions, DE #181, at p. 5; see also id. at p. 13 ("According to NetEvidence, Crabb has deleted 133,197 files from the Asus laptop computer alone, which total approximately 2.4 Gigabytes of data."). Such alleged deletion or alteration is central to the Toscanos' spoliation claims; indeed, such deletion or alteration (which is all that the Wilson Declaration addresses) is the core of the Toscanos' affirmative spoliation arguments.

- The Untimely Exhibits are documents that the Toscanos "have obtained from third parties but which Crabb has not produced." Mot. for Sanctions, at p.7. The Toscanos submit these materials to show that these materials existed at one time but were allegedly deleted from Mr. Crabb's ASUS laptop and as alleged "further evidence" of Mr. Crabb's "bad faith." Id. Of course, these factors, like the thrust of the Wilson Declaration, are part of the Toscanos' affirmative burden in making their spoliation claims in the first place. See Managed Care Solutions, 736 F. Supp.2d at 1322 (observing that the first element in a spoliation claim is that "the missing evidence existed at one time"); id. ("Even if all three elements are met, a party's failure to preserve evidence rises to the level of sanctionable conduct only where the absence of that evidence is predicated on bad faith.").

Accordingly, the Wilson Declaration and the Untimely Exhibits relate entirely to the Toscanos' affirmative spoliation claims, not to a rebuttal of the arguments Mr. Crabb makes in his Opposition. As such, pursuant to the clear terms of this Court's Local Rules,[2] as well as general principles of equity and fairness, the Toscanos were obligated to submit these materials along with their Motion for Sanctions. Yet, like the party moving for spoliation-based sanctions in Managed Care Solutions, the Toscanos failed to do so.[3] The obvious implication is that the Toscanos chose not to do so, instead seeking to sandbag Mr. Crabb with these materials at the proverbial eleventh hour. Such guerrilla tactics should not be countenanced, and the Wilson

[2] See Rule 7.1(c), L.R. S.D. Fla. (stating that a reply "shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law").

[3] Because the Declaration of Marilyn Toscano (DE #194-9) purportedly (but unsuccessfully) rebuts the argument that Mr. Crabb made in his Opposition concerning the timing of when he first began contemplating litigation, Mr. Crabb is not seeking to strike that Declaration. See Local Rule 7.1(c) (allowing materials truly in support of a reply argument to be filed with the reply).

Declaration and the Untimely Exhibits should be stricken. See Local Rule 7.1(c); Managed Care Solutions, 736 F. Supp.2d at 1321 n.6; cf. Willis v. DHL Global Customer Solutions (USA), Inc., 2011 WL 4737909, at *3 (S.D. Fla. Oct. 7, 2011) ("Pursuant to Local Rule 7.1(c), a 'reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition. Judges in this district, therefore, have repeatedly rejected attempts by parties to raise new arguments in reply memoranda.").

**II. In the Alternative, Mr. Crabb Should Be Given Leave – and Sufficient Time – to Prepare and File a Sur-Reply and Supporting Evidentiary Submissions**

In the alternative, should the Court not decide to strike the Toscanos' untimely evidentiary submissions, the Court should give Mr. Crabb leave and sufficient time to prepare and file a sur-reply and supporting declarations and evidentiary submissions to rebut the contents of the Wilson Declaration and the Untimely Submissions.

Although Mr. Crabb and his lawyers and computer forensic examiner, Gabriel Campos, have had little time (only one day) to review and digest the contents of the Wilson Declaration, there are a number of claims and assertions therein that Mr. Crabb reasonably believes could be refuted if Mr. Crabb and his representatives had sufficient time (five days) to do so.

For example, Mr. Campos could assess and likely refute Mr. Wilson's assertion that Mr. Crabb intentionally accessed and sent emails to and from his TEC Serv email address or the STEELSHIELDCOM and ENVIROSTEELCOM accounts after the Toscanos improperly terminated him (or whether, for example, the log-files are showing email activity solely as a result of the system's automated process of communicating with the email server to determine if there are emails to send or receive). See Wilson Decl., at ¶¶ 19-20.

In addition, Mr. Wilson suggests that a "defragging" program was intentionally run to make it more difficult to recover files. Given sufficient time, Mr. Campos could determine if the

defragging program runs automatically, either periodically or merely upon logging into the computer. See id. at ¶ 24.

Further, Mr. Wilson suggests that the defragging program could have destroyed additional data. Mr. Campos has another copy of the ASUS computer hard drive, from September 2011, which could be compared to the current file to prove that no such data was destroyed by any defragging program. See id. at ¶ 26.

Moreover, the Toscanos assert that certain ".lnk" files were used to export data from the ASUS computer. That is not true. The .lnk files merely point to other files. For example, Mr. Campos could analyze the "Lawsuit vs. TEC Serv.LNK" folder to determine when it was in fact created and to what it links, for this folder may well relate to an earlier lawsuit another company had brought against TEC Serv, in which Mr. Crabb was intimately involved in the defense. See id. at ¶ 16. Given time, Mr. Campos could explore the ".lnk" files discussed in the Wilson Declaration to determine when those were actually created and what they were doing. See id. at ¶¶ 12-14.

In addition, Mr. Campos could determine whether, when the "Outlook.pst" and "TEC Serv LLC – TS.pst" files were "last written" on dates following Mr. Crabb's improper termination, as Mr. Wilson claims, the files were actually changed at all or whether (as likely) this was simply an automatic computer process. See id. at ¶¶ 28-29. These are just some of the examples of what Mr. Campos could accomplish if given sufficient time (Messrs. Campos and Crabb believe five days would be sufficient) to do so.[4]

---

[4] Mr. Crabb could also use this time to prepare an additional declaration from himself, refuting the contents of the Untimely Exhibits, such as how Exhibit 3 is not a TEC Serv proprietary document and how neither Exhibit 4 nor Exhibit 5 supports any claim that Mr. Crabb was "pitching work" for Hasson Electric, or otherwise affiliated with the company.

For these reasons, if the Court decides now to strike the Toscanos' untimely evidentiary submissions, the Court should give Mr. Crabb leave and five days to prepare and file a sur-reply and supporting declarations and evidentiary submissions to rebut the contents of the Wilson Declaration and the Untimely Submissions.

**CONCLUSION**

For all of the foregoing reasons, the Court should enter an Order granting this Motion and striking the Wilson Declaration and the Untimely Exhibits. In the alternative, the Court should enter an Order granting this Motion and giving Mr. Crabb leave and five days to prepare and file a sur-reply and supporting declarations and evidentiary submissions to rebut the contents of the Toscanos' late-filed submissions.

**Local Rule 7.1.A.3 Certification**

Pursuant to Local Rule 7.1(a)(3), counsel for Mr. Crabb has attempted to confer with counsel for the Toscanos to resolve these issues raised in this Motion without the need for Court intervention, but has not been able yet to do so. In light of the hearing tomorrow morning at 10:00 a.m., counsel is filing this Motion now and will immediately inform the Court if counsel for Toscanos' counsel consents to the relief requested herein.

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
*Attorneys for the Defendants*
1450 Brickell Avenue, 23rd Floor
Miami, Florida 33131-3456
Telephone: (305) 374-7580
Facsimile: (305) 374-7593

By: /s/ *Jeffrey W. Gutchess*
**JEFFREY W. GUTCHESS**
Florida Bar No. 702641

jgutchess@bilzin.com

**MONTERO WOLKOV LLP**
*Co-counsel for the Defendants*
Four Seasons Tower
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131
Telephone: (305) 297-1878
Facsimile: (888) 788-2341

By: */s/ Benjamin Wolkov*
**BENJAMIN WOLKOV**
Florida Bar No. 466379
bwolkov@monterowolkov.com

**MURAI, WALD, BIONDO & MORENO, P.A.**
Co-Counsel for Defendants
1200 Ponce de Leon Boulevard
Coral Gables, FL 33134
Tel: (305) 444-0101
Fax: (305) 444-0174

By: */s/ Allen P. Pegg* .
**ALLEN P. PEGG**
Florida Bar No. 597821
apegg@mwbm.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel for Plaintiffs via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Allen P. Pegg.