UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62040-CIV-DIMITROULEAS/SNOW

TEC SERV, LLC, a Florida Limited
Liability Company, and JOHN R.
TOSCANO, INC., a Florida corporation,

       Plaintiffs,

vs.

MICHAEL ALAN CRABB, individually,
and A DESIGN AT SUNNINGHILL,
INC., a Florida corporation,

       Defendants.
_____/

MICHAEL ALAN CRABB,

       Counter-Plaintiff,

vs.

TEC SERV, LLC, and JOHN R. TOSCANO, INC.,

       Counter-Defendants,

JOHN TOSCANO and MARILYN TOSCANO,

       Third-Party Defendants
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Third Party Defendants John Toscano and Marilyn Toscano's Motion for an Order Awarding Attorneys' Fees and Accounting Fees Incurred at the Trial Level (ECF No. 306), incorporating Plaintiffs, Counter-Defendants and Third-Party Defendants' Verified Motion for Accounting Fees, Attorneys' Fees and Costs (ECF No. 254) and Plaintiffs, Counter-Defendants and Third Party Defendants' Verified Motion to Tax Costs (ECF No. 247), which was

referred to United States Magistrate Judge Lurana S. Snow for Report and Recommendation. The Motion is fully briefed and ripe for consideration.

## I. BACKGROUND

This case revolves around the membership termination of Defendant/Counter-Plaintiff Michael Alan Crabb (Crabb) from TEC SERV, LLC (TEC Serv), a company which he formed in 2008 with Counter-Defendants John and Marilyn Toscano. On September 16, 2011, Plaintiffs TEC Serv and John R. Toscano, Inc. (JRTI) filed their 16-count Complaint in the instant case alleging violations of the Computer Fraud and Abuse Act (CFAA), the Stored Communications Act, the Lanham Act, the Florida Deceptive and Unfair Trade Practices Act, among other claims. Essentially, the Plaintiffs asserted that Crabb breached the terms of a non-competition clause in TEC Serv's Members Agreement (the Agreement) with his post-termination conduct, and that he misappropriated a company laptop and USB drive that contained confidential information.

Crabb filed a 13-count counterclaim against TEC Serv and JRTI and a third party complaint against John Toscano and Marilyn Toscano (the Toscanos) relating to his termination, alleging breach of the Agreement, breach of the covenant of good faith, fraudulent inducement, and requesting a declaration that the non-compete clause in the Agreement was void by material breach. This Court denied the Toscanos' Motion for Summary Judgment, holding that they could be held individually liable for the alleged breach of the Agreement because they had signed it in their individual capacities.

Following a 12-day bench trial in April 2013, this Court found in favor of TEC Serv on its claim that Crabb had engaged in conversion by retaining a laptop

computer and USB drive and granted the Plaintiffs' request for return of those items, but found that the Plaintiffs had failed to show any damages. The Plaintiffs' remaining claims were rejected by the Court, as were all of Crabb's claims. Thus, the only relief awarded to any party was the return of the laptop and USB drive. The Court compared the case to a cantankerous divorce and posited that the outcome of the case should be a wash. (ECF No. 242 at 13) Final judgment was entered on June 11, 2013. (ECF No. 243)

On July 11, 2013, the Plaintiffs, Counter-Defendants and Third Party Defendants filed a Verified Motion to Tax Costs in the total amount of $11,976.76. (ECF No. 247). Their Bill of Costs identified the claimed costs as $350.00 in fees of the Clerk for removal of Crabb's complaint; $385.00 for service of summons and subpoena; $10,920.92 for printed or electronically recorded transcripts necessarily obtained for use in the case, and $320.84 for printing. (ECF No. 247-1) On the same date, Crabb filed his Motion to Tax Costs (ECF No. 248), claiming costs in the total amount of $4,151.94, consisting of $3,168.20 for transcripts and $983.74 for the costs of making copies (ECF No. 248-2). The undersigned recommended that both motions be denied because there had been no prevailing party in the litigation, and the Court denied the motions. (ECF Nos. 259, 278)

On August 26, 2013, the Plaintiffs, Counter-Defendants and Third-Party Defendants filed a joint Verified Motion for Accounting Fees, Attorneys' Fees and Costs (ECF No. 254), based on a provision in the Agreement which states:

> Should it become necessary for any party to institute legal action to enforce the terms and conditions of this Agreement, the prevailing party or parties shall be awarded a reasonable attorneys' fee, which shall include a reasonable attorneys' fee for any appellate proceedings and expenses, including accounting expenses and costs.

3

(ECF No. 1-4 at 21) The Motion, which was referred to the undersigned, sought a total award of $1,000,910.50, representing $4,125.00 paid for deposition testimony; $165,675.50 for accounting services, and $831,110.00 in attorneys' fees. Crabb also filed a Motion for Attorney's Fees (ECF No. 255), seeking a substantially smaller amount of fees and expenses. In her Report and Recommendation, the undersigned concluded that for all intents and purposes, no party had prevailed for purposes of the applicable clause in the Agreement, and that no fees should be awarded. (ECF No. 268) The District Court agreed and adopted the recommendation of the undersigned. (ECF No. 279)

The Plaintiffs, Counter-Defendants and Third Party Defendants appealed the denial of their requests for fees, expenses and costs. In an unpublished decision on August 11, 2015, the Eleventh Circuit reversed, holding that the Toscanos were prevailing parties because Crabb lost all of his claims against them. (ECF No. 288 at 7) The case was remanded for this Court "to determine the amount of expenses and reasonable attorneys' fees for the services of the Toscanos' attorneys in successfully defending Crabb's claims for breach of the Agreement." Id. at 8.

The instant Motion was filed more than five years later, and purports to relate back to the motion for accounting fees, attorneys' fees and costs filed in August 2013 (ECF No. 254) which did not segregate fees and expenses attributable to the defense of the Toscanos as individual Third-Party Defendants. The Motion seeks approximately the same award as was requested in the 2013 Motion: $1,001,000.50 ($90.00 more than the previously requested amount), with no additional facts or legal argument.

Crabb objected on three grounds: (1) the Motion failed to comply with Local Rule 7.3(a) because it was not filed within 60 days of the entry of the final

judgment or order giving rise to the claim, and the Toscanos also failed to serve a draft motion 30 days after the entry of judgment, confer with Crabb 21 days after the service of the draft motion, file a verification page and file a bill of costs; (2) failed to substantiate the claimed fees and costs by showing that they applied to the defense of them as individuals, and (3) were excessive.

On April 9, 2021, in an abundance of caution, the undersigned directed the Toscanos to

> supplement their Motion for an Order Awarding Attorneys' Fees and Accounting Fees Incurred at the Trial Level (ECF No. 306) with a memorandum addressing:
>
> (1) Any legal response, other than relation-back to the 2013 motion, to Counter-Plaintiff Michael Crabb's arguments that the instant Motion is untimely and fails to comply with Local Rule 7.3, and
>
> (2) A computation, with supporting documents as required by Local Rule 7.3, of legal fees and expenses separately attributable to the defense of Counter-Plaintiff's Third-Party Complaint against the Toscanos in their individual capacities.

(ECF No. 313 at 2)

On April 29, 2021, the Toscanos filed a Reply to Crabb's response to the instant Motion, (ECF No. 316) They asserted: (1) the issue of their entitlement to appellate fees has been resolved in their favor and the fee award should be incorporated into the final judgment; (2) the total amount of claimed costs should be awarded because Crabb's only objection to those costs was that there was no prevailing party; (3) the claimed accounting and attorneys' fees should be awarded because the initial motion was timely filed, fully briefed and remains pending; (4) all fees are applicable to the Toscanos because the claims involving them were inextricably intertwined with those of the corporations, and those fees are substantiated by billing records and reasonable, and (5) Crabb is not entitled to a set off for monies owed to

him. Thus, the Toscanos declined to identify any fees specifically applicable to them and to state why they waited five years to file the instant Motion and did not comply with Local Rule 7.3.

On May 28, 2021, the undersigned issued a Report and Recommendation which recommended that the instant Motion be denied because it was untimely filed and failed to comply with the provisions of Local Rule 7.3, thereby rejecting the Toscanos' argument that the instant Motion relates back to the initial motion filed in 2013. The undersigned noted that the Eleventh Circuit did not remand with instructions to grant the original motion for attorneys' fees which was jointly filed by the corporate defendants and the Toscanos, but instead directed the District Court to determine the fees and expenses applicable to defending the Toscanos against Crabb's claims against them. As a result, the computations in the initial motion were inapplicable and a new motion was required. However, when ordered to supplement the instant Motion with a computation of legal fees and expenses separately attributable to the defense of Counter-Plaintiff's Third-Party Complaint against the Toscanos in their individual capacities, the Toscanos declined to do so. The undersigned found that if the Toscanos had intended to proceed on the initial motion they would not have waited five years to request a ruling, but would have asked the Court to act on the Eleventh Circuit mandate immediately following remand.

On June 14, 2021, this Court sustained the Toscanos' objections to the Report and Recommendation on the ground that it was the Court which failed to act on the Eleventh Circuit's mandate by neglecting to rule on the initial fee motion, thus accepting the Toscanos' argument that the instant Motion related back to the one filed in 2013. (ECF No. 323) The instant Motion was referred back to the undersigned to "determine the amount of expenses and reasonable attorneys' fees for the services of

the Toscanos' attorneys in successfully defending Crabb's claims for breach of the Agreement, consistent with the Mandate and this Order." Id. at 4.

On June 30, 2021, the undersigned directed the parties to confer on the instant Motion and, if they were unable to reach an agreement, to attend a status conference on July 8, 2021. No agreement was reached and the status conference was conducted as scheduled. At that conference, the parties were directed to confer once again and file with the Court, in chart form, identification of: (1) any un-objected to fees and costs; (2) any agreement on the amount of awardable accounting fees and attorneys' fees relating to accounting fees; (3) any agreement on the amount of attorneys' fees related to the categories of discovery, attendance at trial and any other category that can be isolated, as well as any agreement on the estimated portion of each category that was devoted to the breach of contract claims asserted by Crabb in his third party complaint against the Toscanos, and (4) time entries on the invoices submitted that relate to the breach of contract claims that were asserted against the Toscanos and, where entries are combined, a separate identification of those entries that relate to claims asserted against the corporate defendants rather than the Toscanos. A status conference to review the parties' submission was scheduled for August 11, 2021. (ECF No. 326) At the parties' request, the deadline for the submission was extended and the status conference re-scheduled for September 3, 2021. (ECF No. 330)

On September 2, 2021, separate submissions were filed by Crabb and the Toscanos, neither of which addressed the claims for costs pursuant to 28 U.S.C. § 1920. (ECF Nos. 334-35) After oral argument on the submissions, the Court directed the parties to file, on or before close of business on September 9, 2021, the following information: (1) the number of counts in Crabb's third party complaint against the

7

Toscanos; (2) identification by ECF number of the filing by the Toscanos which contains the amounts for fees, and expenses they request, and (3) the parties' positions on the claimed § 1920 costs.

## II. SUBMISSIONS BY THE PARTIES

### A. The Toscanos

The Toscanos' status report (ECF No. 334) contains computations pertaining to various categories of claimed fees and expenses, broken down by timekeeper. The first category deals with fees and expenses to which Crabb did not object at the time of the 2013 motion, consisting of the $11,976.76 in § 1920 costs; $227,543.26 in attorneys' fees, and $169,890.50 in accounting fees, for a total of $409,410.52. The Toscanos contend that under the Local Rules of this Court, the Defendant has waived any objection to these fees, costs and expenses by not specifically objecting to them.

Next, the Toscanos identify attorneys' fees specifically relating to the accounting fees, totaling $351,429.00. They point out that some of these fees are included in the preceding category, dealing with fees to which Crabb did not object.

The third category identified by the Toscanos are fees isolated by service provided by their attorneys, consisting of $121,755.50 for discovery and $60,375.00 for attendance at trial, resulting in a total of $182,130.50. These fees also overlap with the category of fees to which Crabb did not object.

Finally, the Toscanos list the fees specifically relating to Crabb's breach of contract claims, which total $45,398.00. They note that Crabb does not object to $16,889.00 of that amount. Crabb did not agree to any of the amounts listed in the other categories.

## B. Crabb's Submission

Crabb's submission (ECF No. 335) first identifies the specific time entries relating to the defense of the Toscanos. Crabb asserts that because of block billing, it is impossible to determine exactly what portion of each billing entry is attributable to the Toscanos' defense. As to each entry, Crabb has listed his estimate of the time attributable to the Toscanos, with the resulting total of $16,889.10.

As to the categories of discovery and attendance at trial, Crabb contends that a sizable portion of the time spent by opposing counsel was devoted to pursuit of the corporate entities' claims against Crabb. Crabb identifies 16 motions relating to these claims, all of which were denied. Also by way of example, Crabb identifies several blocks of time entries (those from September 2011 through April 2012, May 2012 and August 2012 through January 2013) which relate almost exclusively to pursuit of the claims raised in the complaint. Crabb also identifies billing entries which describe "work on discovery," "work on pending issues" and "trial preparation" which make it impossible to ascertain the claims to which the work related.

Regarding the claimed accounting fees and fees related to the accounting fees, Crabb first notes that the first accounting report, dated October 30, 2012, had nothing to do with the breach of contract claims. Although the Toscanos have conceded that accounting fees related to this report are not recoverable, they continue to claim attorneys' fees related to that report in the amount of $76,623.00. As to the second accounting report, Crabb contends that the report relates to Count VII of Crabb's counterclaim, which concerned only TEC Serv's obligation to pay Crabb retained earnings. He adds that the Toscanos' motion for summary judgment did not include this Count. Crabb also points out that no Defendant prevailed on this claim because the Court identified it as premature.

As to the third report, dealing with a valuation of TEC Serv, Crabb asserts that the only possible relevance to the Toscanos concerns potential damages, and therefore the amount claimed by the Toscanos for accounting fees related to that report must be reduced considerably. Crabb also identifies numerous attorney billing entries that cannot be attributed to work on the third report because they are either vague or block billed. Finally, Crabb argues that the amount claimed for accountants and attorneys working on this report are excessive, with 1173 hours of time and more than $450,000 in attorneys' fees for an expert report which calculated Crabb's undistributed retained earnings to be $286,764 (which remains unpaid to him).

## C. Supplemental Submissions

The parties were directed to file supplemental information consisting of: (1) the number of counts directed against the Toscanos; (2) the amounts of fees, expenses and costs claimed by the Toscanos, and (3) the appropriate award of § 1920 costs. The submissions were filed on September 8, 2021.

The Toscanos contend that each of the 13 claims in Crabb's counterclaim/third party complaint includes them, noting that each incorporates all prior allegations and each makes reference either to "the Toscanos" or the "Defendants." The Toscanos state that they are claiming $831,110.00 in attorneys' fees, $169,890.50 in accounting fees and $11,976.76 in § 1920 costs. They assert that all costs are taxable under § 1920. (ECF No. 339)

Crabb asserts that only 1 count of his counterclaim/third party complaint (Count V, fraudulent inducement) was directed solely against the Toscanos, and four counts (Counts I-IV and VI) were directed against all Defendants. Crabb objects to all of the claimed costs because the Toscanos made no effort to identify costs attributable to the defense of their claims. Crabb argues that the determination of the proper

10

amount of fees and costs should not be based on the number of counts directed against the Toscanos. (ECF No. 338)

### III. DISCUSSION

#### A. Attorneys' Fees

This Court must calculate a reasonable attorney fee by utilizing the "lodestar" method described in Hensley v. Eckerhart, 461 U.S. 424 (1983), which held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," since this computation "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Id. at 433.

The party seeking an award of fees should submit evidence supporting the hours worked and the hours claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly. A district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Id. at 433-34. Therefore, counsel for the prevailing party "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Id. at 434.

The Eleventh Circuit has adopted the lodestar approach as the method to be used in calculating federal statutory fee awards. Norman v. Housing Auth. of Montgomery, 836 F.2d 1292 (11th Cir. 1988). The court must begin by determining a reasonable hourly rate, which is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. at 1299, (citing Blum v. Stenson, 465 U.S. 886, 895

(1984)). The applicant bears the burden of proving, by direct or opinion evidence, that the requested rate is in line with prevailing market rates. Norman, 836 F.2d at 1299.

The applicant also bears the burden of documenting his or her time expenditures, and may submit opinions as to their reasonableness. Id. at 1303. However, the court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Id. Moreover, where billing records are voluminous, "an hour-by-hour analysis of a fee request is not required." Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994). District courts may make reasonable "across-the-board percentage cuts" instead of engaging in an hour-by-hour analysis of a fee request. Id.

In the instant case, Crabb does not object to the hourly rates claimed by the various timekeepers, but does assert that the hours claimed are excessive and that most of the time was expended on the claims raised in the complaint against Crabb. The Eleventh Circuit mandate directs the Court to determine a reasonable fee for defending the Toscanos against the Crabb's claims against them. As a result, the Toscanos' argument that they are entitled to fees and expenses to which Crabb did not object at the time the 2013 motion was filed is not persuasive, since that motion requested the total fees for representing the corporate entities as well as the Toscanos. Also unpersuasive is the Toscanos' argument that they are entitled to all fees, expenses and costs incurred in the case because all claims were inextricably intertwined, since Crabb's Counterclaim/Third Party Complaint raises only claims based on breach of contract, while the Complaint alleges, inter alia, violations of the Computer Fraud and Abuse Act (CFAA), the Stored Communications Act, the Lanham Act, and the Florida Deceptive and Unfair Trade Practices Act.

The undersigned directed the parties to attempt to isolate from the billing records charges which relate to the defense of the Toscanos. The result was a total of $45,398.00 of billing entries which refer to claims against the Toscanos, $16,889.00 of which relate solely to the Toscanos. The undersigned does not believe that either of these figures is sufficient to approximate the actual cost of defending the Toscanos against Crabb's claims, since many tasks, such as attendance at trial and review of discovery, clearly applied to the defense of the Toscanos.

Neither party has suggested any definitive method for assessing the cost of the Toscanos' defense, and Hensley states that there is "no precise rule or formula for making these determinations." Hensley, 461 U.S. at 436. The calculation of an appropriate fee is left to the discretion of the trial judge "in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Id. at 437. After a careful examination of the record in this cause and the billing statements provided by counsel for the Toscanos, the undersigned finds that a reasonable amount for the fees and accounting expenses is $250,000.00, or approximately 25% of the total amount claimed.

B. Costs

Pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920, the Court shall award costs to the prevailing party in a lawsuit. Rule 54(d) creates a presumption in favor of awarding costs, which the opposing party must overcome. Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 639 (11th Cir. 1991).

Taxable costs are identified in 28 U.S.C. § 1920:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the cost of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The decision to award costs is discretionary with the Court, but the Court may tax items specifically enumerated in § 1920, absent alternative contractual or statutory authority. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). In light of the Court's discretion in this determination, the undersigned does not believe it is necessary to reduce the costs award by the amount attributable to the defense of the Toscanos, although other reductions are appropriate, as discussed below.

The undersigned finds that the $350.00 removal fee clearly is taxable as a fee of the Clerk. The Toscanos also seek to tax costs in the amount of $385.00 for service of seven individuals or entities. They utilized a private process server rather than having the Marshal serve the subpoenas, but this is permissible provided the rate charged does not exceed the cost of having a U.S. Marshal effect service. E.E.O.C. v. W&O, Inc., 213 F. 3d 600, 624 (11th Cir. 2000). The applicable rate charged by the U.S. Marshal at the time the subpoenas were served was $55.00 per hour (or portion thereof) for each person served, plus travel costs and other out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3). The Toscanos have requested $55.00 for each person or entity served and the total claimed amount of $385.00 should be awarded.

The Toscanos claim costs in the total amount of $10,920.92 for transcripts.[1] Courts in this District have held that some costs related to depositions are not taxable because they were incurred for the convenience of counsel. Klayman v. Freedom's Watch, Inc., 2008 WL 4194881 at *5-6 (S.D.Fla. Sept. 12, 1998) (expedited shipping, ASCII disks, e-transcripts, word index, condensed copy, CD-rom, real time hookup, additional DVDs and storage charges not recoverable); RGF Environmental Group v. Activ Tek Environmental Corp., 2010 WL 3269982 at *3 (S.D.Fla. July 21, 2010) (deposition exhibits, delivery charges, expedited fees, postage costs, condensed transcripts, ASCII disks and copies of transcripts not recoverable); Woods v. Deangelo Marine Exhaust Inc., 2010 WL 4116571 at *8 (S.D.Fla. Sept. 27, 2010) (court reporter charges related to the delivery of transcripts, handling of exhibits and CD copies not recoverable).

The undersigned agrees with the reasoning in those cases and consistently has disallowed costs incurred for the convenience of counsel, and allowed only fees associated with court reporter attendance and fees for producing transcripts. In the absence of good cause for obtaining expedited transcripts, rush fees are excluded. In this case, the allowable costs are as follows: (1) $1664.40 for deposition of Michael Alan Crabb ($500.00 for attendance fees and $1164.40 for transcript) (ECF No. 247-1 at 20); (2) $238.10 for deposition of Ethan Shaner ($70.00 for attendance fee and $168.10 for transcript) (ECF No. 247-1 at 21); (3) $1,352.70 for deposition of John Toscano (transcript, no separate attendance fee listed) (ECF No. 247-1 at 17); (4) $258.30 for deposition of Marilyn Toscano (transcript, no separate attendance fee listed) (ECF No. 247-1 at 18); (5) $410.00 in attendance fee for deposition of Cinnamin

---

[1] In their Supplemental Submission, the Toscanos state that this claim is based on a mathematical error, noting that the total charged for depositions reflected in the invoices is $11,506.71. (ECF No. 339 at 4-5)

O'Shell Turk, no award for expedited transcript (ECF No. 247-1 at 19), and (6) $1,948.10 for the deposition of Morris Berger (transcript, no separate attendance fee listed) (ECF No. 247-1 at 22). The cost of the expedited transcript excerpt from the deposition of John Toscano (ECF No. 247-1 at 16) is not taxable. Accordingly, the taxable costs for printed or electronically recorded transcripts necessarily obtained for use in the case is $5,871.60.

Finally, the Toscanos seek $320.84 for printing costs, representing the costs of making copies of trial exhibits. (ECF No. 247-1 at 24) These copies clearly were made for use in the case and this amount is taxable. Thus, the total of taxable costs is $6,927.44 ($350.00 + $385.00 + $5,871.60 + $320.84).

## IV. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that Third Party Defendants' John Toscano and Marilyn Toscano's Motion for an Order Awarding Attorneys' Fees and Accounting Fees Incurred at the Trial Level (ECF No. 306), incorporating Plaintiffs, Counter-Defendants and Third-Party Defendants' Verified Motion for Accounting Fees, Attorneys' Fees and Costs (ECF No. 254) and Plaintiffs, Counter-Defendants and Third Party Defendants' Verified Motion to Tax Costs (ECF No. 247) be GRANTED, in part, and that the Third Party Defendants be awarded $250,000.00 for attorneys' fees and accounting expenses and $6,927.44 in taxable costs.

The parties will have 5 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge. The Objection period has been shortened in light of the requests for extensions of time requested

by the parties on the underlying Motion. Therefore, Objections to this Report and Recommendation will be due no later than September 15, 2021. Any Response to the Objections will be due no later than September 20, 2021. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 10th day of September, 2021.

/s/ Lurana S. Snow
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:
All counsel of record